**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| Reginald James Miller, | ) | Civil Case No. 2:24-cv-07240-RMG-MGB |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Health Care Authority (HCA) Nurse | ) | |
| June Smith, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff, a state prisoner appearing *pro se* and *in forma pauperis*, brings this civil action pursuant to 42 U.S.C. § 1983. Before the Court is Defendant's Motion for Summary Judgment. (Dkt. No. 28.) Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate Judge for consideration. For the reasons set forth below, the undersigned recommends Defendant's Motion be granted.

## BACKGROUND

### A.     General Background

This action centers on Plaintiff's allegations that he did not receive adequate medical treatment after injuring his "right/hand finger" on July 13, 2024, while housed at Manning Correctional Institution. (Dkt. No. 12.) In his unverified Amended Complaint,[1] Plaintiff alleges he "initially injured his hand fighting off a swarm of wasp that flew in through a cell window." (*Id*.

---

[1] *See Goodman v. Diggs*, 986 F.3d 493, 495 (4th Cir. 2021) ("A complaint is verified if it is signed, sworn, and submitted under penalty of perjury.") (internal quotations omitted); *see also Thompson v. Hartsfield*, No. 5:17-CT-3262-FL, 2020 WL 5709247, at *4 (E.D.N.C. Sept. 24, 2020) ("Plaintiff's unverified complaint is not competent summary judgment evidence."); *Huff v. Outlaw*, No. 9:09-cv-00520-RBH, 2010 WL 1433470, at *2 (D.S.C. Apr. 8, 2010) ("[T]he law is clear that a plaintiff cannot rely on an unverified complaint in opposing a motion for summary judgment.").

1

at 2.) According to Plaintiff, after "complain[ing] of intense throbbing pain in his right hand and right small finger" on July 14, 2024, he was "escorted to medical where he was seen by" Defendant "Health Care Authority Nurse June Smith." (*Id*.) Plaintiff alleges Defendant "told Plaintiff that the puffiness and swelling of his hand and finger was more than likely due to a broken bone but told Plaintiff an x-ray would be needed to confirm whether in fact a bone was broken." (*Id*.) Plaintiff claims he was "sent back to his unit" after receiving "some white galls [sic] and tape." (*Id*. at 3.)

On July 26, 2024, Plaintiff "reported to medical on his own cognizance, . . . still complain[ing] of pain, swelling, and numbness in his right hand and small finger." (*Id*.) Plaintiff alleges he asked for pain medication and Defendant told him "that without an incident report of his injury he could not be seen/treated by medical." (*Id*.) Plaintiff alleges that the next day he spoke to non-party correctional officers about his difficulty "being seen/treated by medical" because Defendant was requiring "an incident report from an officer documenting his injury." (*Id*.) Plaintiff was escorted to medical on July 28, 2024 and received "some generic Ibuprofen and some generic Tylenol." (*Id*.) Plaintiff alleges non-party Sgt. Aishbill completed the incident report on August 1, 2024. (*Id*.)

Plaintiff alleges he reported to medical "upon his own cognizance on August 20, 2024, . . . . complaining of excessive stiffness in his right hand and small right finger." (*Id*. at 4.) According to Plaintiff, when Defendant "saw Plaintiff had reported to medical on his own cognizance, she stated to him in a loud and boisterous voice, 'I don't even know why you are up here'" and sent Plaintiff back to his unit without any medical treatment. (*Id*.) On September 1, 2024, Plaintiff was transported to Kirkland Correctional Institution for an x-ray of his hand, which "revealed that a bone had in fact been broken in the hand." (*Id*.)

2

Plaintiff alleges that on November 29, 2024, he saw an "orthopedic doctor/specialist" and was "informed that his injured hand/finger should have been placed in a cask [sic] and because it wasn't, the bone has mended incorrectly and the only remedy . . . is to rebreak the bone." (*Id*. at 5.) "The doctor/specialist further informed the Plaintiff that he wanted to observe the healing process with whatever treatment plan established by SCDC before rebreaking the bone." (*Id*.) Plaintiff alleges that Defendant violated SCDC policy and his constitutional rights by failing to timely schedule his x-ray and appointments, failing to "adequately diagnose his injury," and failing to "direct that his hand/finger be placed in a cast to prevent further injury." (*Id*. at 5–6.)

Plaintiff filed this action on December 11, 2024, seeking $100,000.00 in "monetary relief" as well as "relief for his pain and suffering." (*Id.* at 7.) On November 3, 2025, Defendant filed a Motion for Summary Judgment. (Dkt. No. 28.) The next day, this Court issued an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the dismissal procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 29.) Plaintiff filed a response in opposition on December 10, 2025 (Dkt. No. 31), and Defendant did not file a reply. The Motion for Summary Judgment is ready for the Court's review.

## B.     Evidentiary Background

Defendant has submitted Plaintiff's medical records in support of her Motion for Summary Judgment. (Dkt. No. 28-2.) These records show that Plaintiff "presented to medical" for an "emergency visit" on July 14, 2024, complaining that he broke his finger. (*Id*. at 39.) The records from this visit indicate he was treated by non-party RN Jane Garmany, who wrote that Plaintiff "said he is pretty sure he broke his right pinky finger last night, said he was half asleep and swatted at a bug and hit the locker instead. He had a make-shift buddy tape." (*Id*. at 40.) Garmany further wrote,

3

> Limited change of motion, he was unable to move his pinky out to the right side but looks slightly twisted towards the side, he could barely bend his pinky forward. Pinky lighter in color, pulses WNL, area edemetous- just pinky. He said his pain is worse over first knuckle, but when try to bend other fingers on right hand, unable to make a fist all the way. R pinky is sticking out to the right hand side compared to other hand.

(*Id*. at 40.) Garmany "buddy taped [Plaintiff's] finger after cleansed" with "no abrasions noted." (*Id*. at 41.) She gave Plaintiff an "Ibuprofen starter pack," indicated an x-ray would be ordered, and instructed Plaintiff to "let us know if worsens." (*Id*.)

On July 15, 2024, Plaintiff's "right pinky finger" was assessed by non-party LPN Shenika Anderson. (*Id*. at 36.) Notes from this clinical visit state, "Old dressing removed. Finger is swollen, bruised and hurts to move finger laterally, pain 10/10. Finger was dressed with splint and cling wrap with the next finger, offender state finger feels comfortable with wrap." (*Id*.) Anderson wrote she "informed provider Np Smith about findings." (*Id*.) The record shows that Defendant placed an order for Plaintiff to have a "hand x-ray" that same day. (*Id*. at 14.)

On July 27, 2024, Plaintiff presented to medical again for an "emergency visit" after "report[ing] he re-injured his right hand in the shower, almost fell but caught himself with injured hand on sink." (*Id*. at 33.) Plaintiff reported his pain was "a 10, excruciating pain." (*Id*. at 32.) Plaintiff was treated by Garmany, who noted Plaintiff's pinky finger was "not as swollen and good capillary refill in nails. No discoloration and no change in temperature." (*Id*. at 33.) Garmany buddy taped his ring finger and pinky. (*Id*.) Garmany "spoke with NP Smith on 7/28/24 AND she ordered to give IBU 2-400 MG tabs Q 8 HRS PRN AND TYLENOL 325 MG 3 TABS Q 8 HRS." (*Id*.) The starter pack and instructions were given to Plaintiff and written on the pack. (*Id*.)

An x-ray of Plaintiff's right hand was taken on August 29, 2024, and revealed a "subtle slightly displaced fracture in the base of the proximal phalanx of the right 5th finger into the joint

4

space, with no other abnormalities at the right hand." (*Id.* at 29, 35.) Defendant reviewed these x-ray results on September 13, 2024. (*Id.* at 35.)

Plaintiff had a "provider visit" with Defendant on September 12, 2024, wherein he complained of "pain in right pinky finger." (*Id.* at 26.) Notes from this visit indicate the x-ray results had not yet been read, and Plaintiff "verbalized understanding that depending on finding will determine if orthopedic department will be involved in his care." (*Id.* at 27.) Plaintiff stated "I'm good" when "asked if he needed pain medication." (*Id.*) Plaintiff met with Defendant again on October 2, 2024, for a follow up of x-ray results. (*Id.* at 19.) At this appointment, Plaintiff stated "my hand is not hurting now but hurts on and off." (*Id.*) Defendant's notes indicate Plaintiff would be sent "to Ortho for evaluation." (*Id.* at 20.) A "Chart Update-Clinical" from that same appointment states that non-party RN Wanda Brown was

> called down to medical to address concerns as it related to inmate presenting to medical on previous visit in clinic in which he became verbally aggressive with staff. Offender was asked to put in a Request to Staff member by staff if he wants to be seen for any medical issued [sic].

(*Id.* at 16.) Brown's chart update further states,

> Today inmate was informed that the provider would be sending to orthopedics for evaluation of right hand. Denies any pain at this time. Right hand is currently not in a splint/cast; Denies any numbness, tingling of hand; and AROM of affected hand and arm during visit; no visible swelling./malalignment. States he wore the splint approx 9 mos with buddy splint recently; states pain comes and goes at times; stats he did not need anything for pain. Stated he injured the right hand twice within a short time span recently. NP Smith here in clinic and explaining the plan of treatment. Offender informed to RTC if needed if condition worsens. Verbalized understanding.

(*Id.*)

On October 10, 2024, Plaintiff was "scheduled with COA MUSC Ortho Clinic" for a November 25, 2024 appointment. (*Id.* at 15.) Plaintiff was seen by an orthopedic surgeon on November 25, 2024. (*Id.* at 1.) Notes from this visit show that Plaintiff's right hand was examined

5

and revealed "no deformity" with "mild swelling at the small finger MCP joint" and "full MCP motion." (*Id*. at 1–2.) "No surgical intervention [was] recommended," and the surgeon placed a referral "for strengthening and ROM exercise routine." (*Id*. at 2.)

## STANDARDS

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" *Id.* (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)); *see also Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir. 1990). Conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

Because Plaintiff is representing himself, these standards must be applied while liberally construing his filings in this case. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

**DISCUSSION**

In her Motion for Summary Judgment, Defendant argues, *inter alia*: (1) any § 1983 claims alleged against Defendant in her official capacity are barred by the Eleventh Amendment; (2) Plaintiff's § 1983 deliberate indifference claim fails as a matter of law; and (3) Defendant is entitled to qualified immunity. (Dkt. No. 28-1.) The undersigned considers these arguments below.

**A.     Eleventh Amendment**

Defendant first argues that any § 1983 claims against her in her official capacity should be dismissed pursuant to Eleventh Amendment immunity. (Dkt. No. 28-1 at 4–5.) The Eleventh Amendment prohibits federal courts from entertaining an action against a state. *See*, *e.g.*, *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam) (citations omitted); *Hans v. Louisiana*, 134 U.S. 1, 10–11 (1890). This immunity "extends to 'arm[s] of the State,' including state agencies and state officers acting in their official capacity," *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996) (alteration in original) (internal citations omitted), because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . [and] is no different from a suit against the State itself," *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted). Therefore, Eleventh Amendment immunity protects state agencies and state officials sued in their official capacity from liability for monetary damages under 42 U.S.C. § 1983. *Id.*

"As a state agency, SCDC is an arm of the State of South Carolina." *Abebe v. S.C. Dep't of Corr.*, No. 0:09-cv-3111-MBS-PJ, 2010 WL 2991595, at *2 (D.S.C. July 2, 2010), *adopted in part*, 2010 WL 3258595 (D.S.C. Aug. 16, 2010). Here, there is no dispute that Defendant was an employee of SCDC during the events at issue. Accordingly, the undersigned recommends all § 1983 claims seeking monetary damages against Defendant in her official capacity should be

dismissed. *See Perry v. Boards*, No. 6:24-cv-00075-BHH-KFM, 2024 WL 5507489, at *10 (D.S.C. Dec. 30, 2024) ("[D]espite the plaintiff's attempt to sue Sgt. Harris and Nurse Boards in their individual capacities, as SCDC employees, they are entitled to immunity under the Eleventh Amendment."), *adopted by*, 2025 WL 704406 (D.S.C. Mar. 5, 2025); *Edwards v. Patell*, No. 4:06-cv-0748-HFF-TER, 2007 WL 2428548, at *8 (D.S.C. Aug. 21, 2007) (dismissing claims brought against defendant "employee of SCDC" in his official capacity).

### B.    § 1983 Deliberate Indifference Claim

Defendant next argues that Plaintiff's deliberate indifference claim fails as a matter of law and she is entitled to qualified immunity as to this claim. (Dkt. No. 28-1 at 5–13.) As noted above, Plaintiff alleges that Defendant violated SCDC policy and his constitutional rights by: failing to timely schedule his x-ray and appointments; failing to "adequately diagnose his injury"; and failing to "direct that his hand/finger be placed in a cast to prevent further injury." (Dkt. No. 12 at 5–6.) The Amended Complaint further alleges that "the inconsiderate attitude of HCA Nurse Smith coupled with her failure and/or lack of interest to properly and timely schedule his appointments amount to negligence sufficient to constitute a wanton reckless disregard of her duty to provide Plaintiff with constitutionally adequate medical treatment." (*Id*. at 6.)

As an initial matter, "[t]he constitutional protections afforded to inmates are limited, and a claim that prison officials have not followed their own policies or procedures does not amount to a constitutional violation." *Middleton v. Zych*, No. 7:12-cv-00266, 2012 WL 4742777, at *2 n.7 (W.D. Va. Oct. 4, 2012), *aff'd*, 514 F. App'x 401 (4th Cir. 2013); *see also Rivera v. Robinson*, No. 8:24-CV-5292-SAL-WSB, 2024 WL 4958206, at *5 (D.S.C. Oct. 4, 2024) ("To the extent Plaintiff asserts entitlement to relief because Defendants violated SCDC Policy, any such claim is without merit as a matter of law.") (collecting cases), *adopted by*, 2024 WL 4957982 (D.S.C. Dec. 3, 2024).

Accordingly, the undersigned focuses here on Plaintiff's alleged deliberate indifference claim under § 1983.

### 1.    Deliberate Indifference Standard

Under the Eighth Amendment, prisoners have the right to receive adequate medical care while incarcerated. *See Scinto v. Stansberry*, 841 F.3d 219, 236 (4th Cir. 2016). When a prison official demonstrates "deliberate indifference" to an inmate's serious medical needs, a constitutional violation occurs under the Eighth Amendment. *See id*.; *Estelle v. Gamble*, 429 U.S. 97, 101–06 (1976); *see Pfaller v. Amonette*, 55 F.4th 436, 445 (4th Cir. 2022) ("Because adequate . . . medical care is a basic condition of humane confinement, a prison official's deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.") (internal citations and quotation marks omitted). To state a claim for deliberate indifference to serious medical needs, a prisoner must show that he had a serious medical need and that officials knowingly disregarded that need and the substantial risk it posed. *King v. Rubenstein*, 825 F.3d 206, 218–20 (4th Cir. 2016); *Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209–11 (4th Cir. 2017). The first component requires an objectively "serious medical need" that has been "diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Heyer*, 849 F.3d at 210 (citation omitted). The second subjective component requires a showing "that the defendant acted with deliberate indifference" to that medical need. *Id*. at 209–10. An official acts with deliberate indifference if she had actual knowledge of the prisoner's serious medical needs and the related risks, but nevertheless disregarded them. *See Scinto*, 841 F.3d at 225–26.

9

Not "every claim by a prisoner [alleging] that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Estelle*, 429 U.S. at 105. Rather, "the treatment given must be 'so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Hixson v. Moran*, 1 F.4th 297, 303 (4th Cir. 2021) (quoting *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990)). Mere negligence, malpractice, or incorrect diagnosis is not actionable. *See Estelle*, 429 U.S. at 106. Moreover, "[a]n inmate's mere disagreement with the course of treatment provided by medical officers will not support a valid Eighth Amendment claim." *Jackson v. Sampson*, 536 F. App'x 356, 357 (4th Cir. 2013) (citation omitted). Also, "questions of medical judgment are not subject to judicial review." *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975).

### 2.    Analysis

Upon careful review, the evidence does not establish a genuine issue of material fact that Defendant was deliberately indifferent to a serious medical need. As summarized above, Plaintiff's medical record shows Defendant and other medical staff were responsive to Plaintiff's complaints of injury and pain to his right hand, promptly ordered an x-ray, adjusted Plaintiff's pain medication as needed, and scheduled Plaintiff to meet with an orthopedic surgeon upon review of the x-ray results. (Dkt. No. 28-2 at 16–41.) After meeting with an orthopedic surgeon, "no surgical intervention [was] recommended." (*Id*. at 2.) Rather, the orthopedic surgeon referred Plaintiff for a "strengthening and ROM exercise routine." (*Id*.)

In his brief, Plaintiff argues that by "allow[ing] the time to lapse for his x-rays," Defendant denied Plaintiff "his constitutional right to be timely and properly diagnos[ed] and treated, [and] she deprived him of his constitutional right to adequate health care." (Dkt. No. 31 at 4.) Here, Plaintiff appears to rely on his unverified allegation that the orthopedic surgeon told him "his

10

injured hand/finger should have been placed in a cask [sic] and because it wasn't, the bone has mended incorrectly and the only remedy . . . is to rebreak the bone." (Dkt. No. 12 at 5.) The records from Plaintiff's consultation with the orthopedic surgeon do not reference any such statement, however, or otherwise indicate that further treatment was needed beyond a "strengthening and ROM exercise routine." (Dkt. No. 28-2 at 1–3.) Plaintiff's unverified allegations, without more, do not create a genuine issue of material fact as to this § 1983 claim. *See Aten v. Richland Cnty.*, No. 5:16-cv-03614-PMD-KDW, 2018 WL 4560572, at *8 (D.S.C. July 3, 2018) ("While Plaintiff makes numerous unverified allegations, those types of assertions are not sufficient to establish that genuine issues of material fact exist" to support a § 1983 claim for deliberate indifference to a serious medical need), *adopted by*, 2018 WL 4109608 (D.S.C. Aug. 29, 2018), *aff'd sub nom. Aten v. Wiggins*, 839 F. App'x 798 (4th Cir. 2021);

Rather, Plaintiff's allegations of misdiagnosis and inadequate medical treatment amount to a "[d]isagreement[ ] between an inmate and a [medical provider] over the inmate's proper medical care," which the Fourth Circuit has "consistently" found "fall[s] short of showing deliberate indifference." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014); *Wester v. Jones*, 554 F.2d 1285, 1286 (4th Cir. 1977) ("Even if the doctor were negligent in examining [Plaintiff] and in making an incorrect diagnosis, his failure to exercise sound professional judgment would not constitute deliberate indifference to serious medical needs."); *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975) (plaintiff was under "constant medical supervision from the time of his arrival" in state prison and "[q]uestions of medical judgment are not subject to judicial review"); *Boley v. Armor Corr. Health Servs., Inc.*, No. 2:21-cv-197 (RCY), 2022 WL 905219, at *8 (E.D. Va. Mar. 28, 2022) ("Misdiagnosing an inmate's illness is not a sufficient basis for a [§ 1983 deliberate indifference] claim.").

11

Further, to the extent there was a delay in Plaintiff having an x-ray taken and seeing an orthopedic surgeon, there is no evidence showing this delay resulted in substantial harm to Plaintiff. *See Nelson v. Caswell*, No. 8:05-cv-874HMH-BHH, 2006 WL 1432084, at \*4 (D.S.C. May 23, 2006) ("Critically, an inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed.") (internal quotations omitted); *Smith v. Walker*, 845 F. Supp. 2d 673, 677 (W.D.N.C.) ("Delay in medical care, without showing substantial harm, does not violate the [Constitution]."), *aff'd*, 476 F. App'x 417 (4th Cir. 2012); *see also Lewis v. Eagleton*, No. 4:08-cv-02800-GRA, 2010 WL 755636, at \*8 (D.S.C. Feb. 26, 2010) ("There is no competent evidence in the record to show the delay . . . caused any harm."), *aff'd*, 404 F. App'x 740 (4th Cir. 2010).

In short, the record does not establish a genuine dispute of material fact that Defendant acted with actual intent or reckless disregard with respect to Plaintiff's hand injury and reported pain. Accordingly, the undersigned recommends Defendant is entitled to summary judgement on Plaintiff's § 1983 deliberate indifference claim.[2] *See Mickell v. Ozmint*, No. 3:08-cv-2973-RBH, 2009 WL 1361873, at \*4 (D.S.C. May 11, 2009) (granting summary judgment on § 1983 deliberate indifference claim where "plaintiff disagrees with the treatment he has been offered"); *Duncan v. Gordon*, Case No. 8:06-cv-396-MBS, 2007 WL 1031939, at \*3 (D.S.C. Mar. 29, 2007), *aff'd*, 260

---

[2] Plaintiff makes no argument that he brings a separate claim against Defendant for medical malpractice under South Carolina law, and the undersigned does not construe any such claim in the Amended Complaint. Regardless, Plaintiff has not produced expert testimony as to the standard of care, any alleged failure to conform to the required standard, or that the alleged violation was a proximate cause of his injuries. Nor has Plaintiff otherwise presented a plausible argument that establishes that the alleged negligent acts lie within the ambit of common knowledge and experience, so that no special learning is needed to evaluate Defendant's conduct. Accordingly, the undersigned finds any such claim fails as a matter of law. *See David v. McLeod Reg'l Med. Ctr.*, 626 S.E.2d 1, 4 (S.C. 2006) (to establish medical malpractice under South Carolina law, the "plaintiff must provide expert testimony to establish both the required standard of care and the defendants' failure to conform to that standard, unless the subject matter lies within the ambit of common knowledge so that no special learning is required to evaluate the conduct of the defendants").

F. App'x 543 (4th Cir. 2007) (granting summary judgment on deliberate indifference claim where "[t]here is no evidence that Defendant nurses withheld any medical treatment in an effort to deliberately or recklessly ignore an excessive risk to Plaintiff's health"); *Krug v. Loranth*, No. 1:13-cv-01409-DCN, 2014 WL 4955365, at *4 (D.S.C. Sept. 29, 2014) ("The fact that a prisoner believed he had a more serious injury or that he required better treatment does not establish a constitutional violation."), *aff'd*, 599 F. App'x 512 (4th Cir. 2015).

Moreover, because she is a government official, Defendant is entitled to qualified immunity from civil damages so long as her "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Christian v. Magill*, No. 0:15-cv-03379-DCN, 2016 WL 4975020, at *6 (D.S.C. Sept. 19, 2016) (applying qualified immunity analysis to employees of the SVPTP). In other words, Defendants are entitled to qualified immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Here, because Plaintiff has not demonstrated that Defendant violated his constitutional rights, she likewise is entitled to a finding of qualified immunity as to this claim.[3]

## **CONCLUSION**

Based on the foregoing, it is RECOMMENDED that Defendant's Motion for Summary Judgment (Dkt. No. 28) be GRANTED.

IT IS SO RECOMMENDED.

---

[3] Having recommended dismissal on these grounds, the undersigned does not consider Defendant's remaining arguments for dismissal.

June 29, 2026

Charleston, South Carolina

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

14

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).